CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 17 2007
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES MADISON MCCAULEY, | Civil Action No. 7:07cv00244 |
| Plaintiff, | MEMORANDUM OPINION |
| GENE JOHNSON, et al., | By: Hon. James C. Turk |
| | Senior United States District Judge |
| Defendants. | |

Plaintiff James Madison McCauley ("McCauley"), a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants have failed to provide him with adequate dental care during his incarceration at Keen Mountain Correctional Center ("KMCC"). McCauley seeks $200,000.00 in monetary compensation and injunctive relief in the form of a lower denture plate for himself and better dental care for the inmates at KMCC. Defendants filed Motions for Summary Judgment to which McCauley filed a timely response, making the matter ripe for disposition.[1] For the reasons that follow, Defendants Johnson, Schilling, and Bassett's Motion for Summary Judgment will be granted and Defendant Gilbert's Motion for Summary Judgment will be granted in part and denied in part and Defendant Gilbert will be directed to provide additional information.

I.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a

---

[1] On August 17, 2007, this court denied McCauley's Motion for Judgment on the Pleadings and Motion for Default Judgment and granted Defendants' motion to deem their Answer as timely filed. On August 21, 2007, McCauley filed a Motion to Strike requesting the court to deny Defendants' motion for an enlargement of time and to file an answer (Dkt. No. 32). As the court's Order of August 17, 2007, addressed McCauley's claims, his motion will be dismissed as moot.

result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Section 1983 "is not itself a source of substantive rights," but instead is "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 (1979).

## II.

McCauley names Nurse Mary Gilbert, Health Authority at KMCC, Kathleen J. Bassett, KMCC Warden, Gene Johnson, Virginia Department of Corrections ("VDOC") Director, and Fred Schilling, VDOC Health Director, as Defendants in this matter. McCauley alleges the following sequence of events from which his claims arise. In the fall of 2001, the KMCC dentist extracted all of McCauley's upper teeth. McCauley was provided with a full, upper denture plate on October 2, 2001. McCauley was unable to "eat properly" because of an "overbite problem." (Compl. at 1.) As "follow-up [d]ental care," the dentist agreed to extract the remaining seven teeth from McCauley's lower gums, and make a full, lower dental plate. (Compl. at 1.) The dentist resigned in early 2002 and no replacement dentist has been procured.

McCauley contends that, in response to his many requests for the extraction and lower denture plate, the Medical Department informed him that he had been placed on a waiting list. McCauley alleges that, during this time, his teeth were "loose and painful" and "very sensitive to cold or hot temperatures," his mouth and gums were "sore regularly," and his gums were subject to intermittent bleeding when he chewed or when he ground his teeth during his sleep. (Am. Compl. at 1.) McCauley was relegated to breaking his food into small portions to swallow the pieces whole or letting the food "soak in his mouth before he could gum [the food] to eat it." (Am. Compl. at 2.) He was also subject to severe headaches due to "aching teeth and sensitivity." (Am. Compl. at 2.)

On March 22, 2007, McCauley filed an Emergency Dental Complaint. McCauley was

examined at the KMCC Medical Department on March 27, 2007. The dental hygienist informed McCauley that his lower teeth were loose and needed to be extracted. The teeth were extracted on April 6, 2007. Again, in response to McCauley's many requests for a lower denture plate, the Medical Department indicated that McCauley had been placed on a waiting list. McCauley claims that he "has lost considerable weight" because he cannot chew his food properly. (Compl. at 1.)

Defendants Johnson, Schilling, and Bassett first state that, insofar as they are being sued in their official capacities, they are immune from suit in this matter as neither a state nor its officials acting in their official capacities are "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). They also argue that, in their individual capacities, they are entitled to qualified immunity. Defendants Johnson, Schilling, and Bassett further contend they were not personally involved in any of McCauley's medical decisions and that they rely on the determinations of the qualified medical staff at each institution. Warden Bassett explains that from 2002 until late 2005, Keen Mountain was without a full-time dentist. During that period, inmates were evaluated by a full-time dental hygienist who would also provide routine care such as cleanings. Furthermore, one day each week, the dentist from Red Onion State Prison would visit KMCC and treat those inmates needing dental treatment. In September of 2005, a full-time dentist was hired at KMCC, but he resigned in May of 2006. Since that time, KMCC has been transporting inmates needing dental care to a local dentist in Grundy, VA. Although the VDOC no longer employs a full-time hygienist at KMCC, a regional hygienist comes to KMCC four to five times per month to perform routine cleanings and to triage those inmates requiring additional dental care. Inmates with emergencies have priority when scheduling appointments with the local dentist. Warden Bassett notes that, since the full-time dentist resigned in 2006, KMCC has continually placed advertisements

for a full-time as well as a contract dentist on the state website and the local newspapers. Warden Bassett speculates that the position has not been filled because KMCC is located in a rural area.

Defendant Nurse Gilbert states that records reveal that McCauley did not request lower teeth extractions until May 18, 2005. He did not indicate that it was an emergency so a dental assistant denied his request, informing him that sick-call was available if he felt that he had an emergency. Gilbert notes that McCauley's requests first came to her personal attention in October of 2006. He filed an internal complaint form on November 21, 2006, but, again, did not indicate an emergent need. On January 13, 2007, McCauley filed a formal grievance which was sent to Gilbert. Gilbert again advised him that, as long as his condition was not emergent, he would be kept on the waiting list and seen in the order in which his name was placed on the list. Gilbert contends that McCauley did not report for sick-call and request emergency dental services until March 22, 2007. On March 27, 2007, McCauley was evaluated by the dental hygienist and referred for extractions. Gilbert also notes that, according to McCauley's medical records, he was seen regularly in 2005 and 2006 for unrelated medical complaints and there were no notations of complaints of dental pain or problems. McCauley's medical records indicate that, when he arrived at KMCC on June 12, 2000, he weighed 158 pounds. McCauley weighed 150 pounds at his last physical on January 12, 2006. Since that time, he has refused two scheduled physicals.

### III.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Thus, both an objective and a subjective component are needed. A medical need serious enough to give rise to a constitutional claim involves

4

a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997).

Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06.

To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

**A. Defendants Johnson, Schilling, and Bassett**

Applying these principles, the court finds that McCauley's Complaint fails to state a claim

5

for deliberate indifference against the supervisory defendants, Defendants Johnson, Schilling, and Bassett. First, there is no indication that Defendants were personally involved with the denial of treatment. See Miltier, 896 F.2d at 854. Moreover, McCauley makes no allegation that the supervisory defendants interfered with the treatment that was ultimately provided by the dentist, or that they tacitly authorized grossly incompetent treatment.[2] See Id. Defendants were entitled to rely on KMCC medical staff to identify inmates with emergency dental needs so that they could be transported to the private dental facility for treatment. For these reasons, the court concludes that McCauley has failed to state a claim for deliberate indifference against Defendants Johnson, Schilling, and Bassett. Accordingly, their Motion for Summary Judgment will be granted.

## B. Defendant Gilbert

The court must next determine whether Nurse Gilbert exhibited deliberate indifference to McCauley's allegedly serious medical needs.

### 1. Delay in Lower Teeth Extraction Claim

It is clear that dental care has been recognized as "one of the most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980). The Second Circuit has noted, however, that "a correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of . . . prisoners would not in freedom or on parole enjoy the excellence in dental care which the plaintiffs understandably seek on their behalf." Dean v. Coughlin, 804 F.2d 207, 215 (2d 1986). This court is governed by the principle that the objective is to "provide the minimum level of [dental] care required by the

---

[2] The court notes that McCauley's own allegations suggest that the delay in obtaining dental treatment resulted, at least in part, from an unfortunate shortage of dentists, rather than a deliberate disregard for his dental health.

6

Constitution." Ruiz v. Estelle, 679 F.2d 1115, 1150 (5th Cir.), vacated in part as moot, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983). "[T]he essential test is one of medical necessity and not one simply of desirability." Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981) (citations omitted).

McCauley has not made any showing that a constitutional right has been violated. While McCauley contends that he continually complained over a six-year period about his lower teeth and their ill-fit in relation to his upper dentures, he does not dispute that he did not request emergency dental services until March 22, 2007. McCauley was examined at the KMCC Medical Department five days after his emergency request and his lower teeth were extracted a few weeks later. The court cannot find that this brief delay was sufficient to give rise to a constitutional claim. Although McCauley believes that the institutional staff or dental staff failed to treat his dental needs by not providing treatment to him on a schedule that gratified his demands, such actions do not rise to the level of a federal constitutional violation. McCauley was continually informed that, until his dental problems reached an emergent level, he would be left on the waiting list and his dental needs would be addressed in the listed order. Moreover, the evidence indicates that the KMCC Medical Department did indeed provide extensive dental treatment to McCauley within a very short time period after he indicated that his dental problems had reached an emergent level. Accordingly, Nurse Gilbert's Motion for Summary Judgment will be granted as to this issue.

## 2. Lower Denture Claim

The court finds that McCauley's lack of lower dentures could be expected to lead to substantial and unnecessary suffering and could thus be a serious medical need. See Wynn v. Southward, 251 F.3d 588 (7 Cir. 2001) (ruling that allegations that an inmate suffered bleeding,

headaches, and disfigurement as a result of not having his dentures demonstrated that the inmate had a serious medical need, supporting his § 1983 claims that corrections officials violated his Eighth Amendment rights when they deprived him of his dentures); Farrow v. West, 320 F.3d 1235, 1244-45 (11th Cir. 2003) (few or no teeth and a definite need for dentures in addition to pain, continual bleeding, swollen gums, two remaining teeth slicing into gums, weight loss, establishes a serious medical need); Hunt v. Dental Department, 865 F.2d 198, 201 (9th Cir. 1989) (inmate with no dentures suffering severe pain, bleeding gums, and breaking teeth could have serious medical need); Darramon v. Crawford, No. H-06-0270, slip op. at *2 (S.D. Tex. Feb. 2, 2007) (denial of dentures to inmate with no teeth accompanied by inmate's allegations of severe pain and weight loss indicated possible deliberate indifference to a serious medical need); Tripp v. Commonwealth of Pa., No. Civ. 1:CV-05-1227, 2005 WL 3132317, at *3 (M.D. Pa. Nov. 22, 2005) (denying motion to dismiss and permitting Eighth Amendment claim to go forward where plaintiff had teeth extracted by a prison dentist and was refused further treatment, including the provision of dentures, when he suffered from pain and "continual bleeding gums"); Gasaway v. District of Columbia, No. 94-2689 PLF, 1996 WL 225699, at *3-4 (D.D.C. April 29, 1996) (allegations that a nine-month delay between the time that prison dentists extracted several of plaintiff's teeth– leaving him with only six lower teeth in his entire mouth–and the time that replacement dentures were inserted by a prison dentist exhibited deliberate indifference to his serious medical needs to proceed to trial).

Nurse Gilbert may well be able to prove that she was not deliberately indifferent and that McCauley fails to prove that his lack of lower dentures is a serious medical need. The court cannot make this finding from the existing record, however. Gilbert does not address the details of McCauley's treatment subsequent to the removal of his lower teeth, provide any medical records,

or indicate KMCC's policies on providing inmates with dentures. Therefore, the court will allow the claims against Gilbert to go forward at this time. Accordingly, the court will deny Gilbert's Motion for Summary Judgment as to this issue and direct her to file an Answer and any supplemental Motion for Summary Judgment supported by affidavit evidence, pursuant to the Standing Order of the Court issued May 3, 1996, and Rule 83(b) of the Federal Rules of Civil Procedure.

## IV.

Accordingly, taking McCauley's allegations in the light most favorable to him, the court concludes that they are sufficient to state possible claims under § 1983. Based on the foregoing, Defendants Johnson, Schilling, and Bassett's Motion for Summary Judgment will be granted. Nurse Gilbert's Motion for Summary Judgment will be granted in part and denied in part and Gilbert will be directed to provide additional documentary evidence to the court. An appropriate Order will issue this day.

ENTER: This 17th day of September, 2007.

*/s/ James C. Turk*
Senior United States District Judge